1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY ALLEN,

11              Petitioner,                 No. CIV S-07-2781 WBS DAD P

12        vs.

13   D.K. SISTO, et al.,                    ORDER AND

14              Respondents.                FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254, challenging the Board of Parole Hearings' decision to deny

18   him parole.  Upon careful consideration of the record and the applicable law, the undersigned

19   will recommend that petitioner's application for habeas corpus relief be denied.

20                         **PROCEDURAL BACKGROUND**

21              On January 24, 1994, petitioner pled guilty in the San Mateo County Superior

22   Court to second degree murder.  The trial court sentenced him to an indeterminate term of fifteen

23   years to life in state prison.  (Pet. at 2; Answer Ex. 1.)

24              On July 27, 2006, the Board of Parole Hearings (hereinafter "Board") conducted

25   petitioner's first subsequent parole suitability hearing.  The Board found that petitioner was not

26   suitable for parole and denied him parole for four years.  (Answer Ex. 2.)

1

1     Petitioner challenged the Board's decision in three petitions for writ of habeas

2   corpus filed in ascending order in state court.  First, petitioner challenged the 2006 denial of

3   parole in a petition for writ of habeas corpus filed with the San Mateo County Superior Court.

4   On February 15, 2007, the Superior Court denied the petition, reasoning as follows:

> The Board based its decision to deny parole, in part, on the
> underlying crime itself, the gang style battle in which one victim
> was killed and four victims injured by gunfire.  This alone was
> sufficient to justify the decision to deny parole.  '[T]he gravity of
> the commitment offense or offenses alone *may* be sufficient basis
> for denying a parole application, so long as the Board does not fail
> to consider other relevant factors.'  (*In re Ramirez* (2001) 94
> Cal.App.4th 549, 569, overruled on other grounds in *In re
> Dannenberg* (2005) 34 Cal. 4th 1061, 1100; citing *In re Seabock*
> (1983) 34 Cal.App.3d 29, 37-38.)
>
> In *In re Dannenberg* (2005) 34 Cal. 4th 1061, 1071, the California
> Supreme Court held: "Accordingly, we conclude that the Board,
> exercising its traditional broad discretion, may protect public safety
> *in each discrete case* by considering the dangerous implications of
> a life-maximum prisoner's crime individually.  While the Board
> must point to factors beyond the minimum elements of the crime
> for which the inmate was committed, it need engage in no further
> comparative analysis before concluding that the particular facts of
> the offense make it unsafe at that time, to fix a date for the
> prisoner's release." (Id.)
>
> Since Petitioner has been committed to CDC Custody for fifteen
> years to life, there is no merit to Petitioner's argument that the
> denial of parole unlawfully converted Petitioner's sentence to a life
> sentence.  The Board advised Petitioner on the record that it was
> placing him on the July 2010 calendar for his next subsequent
> parole hearing. (R.T. 73:9-11.)
>
> CONCLUSION
>
> The record establishes that there existed "some evidence"
> supporting each of the Board's findings, each of which
> independently sufficed as grounds supporting the finding that
> Petitioner would present a threat to society, and therefore justifying
> the denial of parole.

(Pet. (Main Doc.) Exs. at 61-63.)[1]

---

[1]  The cited page numbers are those reflected in the court's electronic file.

1    Next, petitioner filed a petition for writ of habeas corpus challenging the 2006

2   parole denial in the California Court of Appeal for the First Appellate District.  (Answer Ex. 4.)

3   On April 10, 2007, the court summarily denied the petition.  (Pet. Exs. at 55.)  Finally, petitioner

4   filed a petition for writ of habeas corpus in the California Supreme Court.  (Answer Ex. 5.)  On

5   November 14, 2007, the court summarily denied that petition.  (Pet. Exs. at 53.)

6                                  **FACTUAL BACKGROUND**

7                At petitioner's parole hearing, the Board summarized the evidence surrounding

8   his offense of conviction as follows:

9    On October 14th, 1992, at approximately 9:21 p.m. the East Palo
     Alto Police Department and San Mateo County Sheriff's
10   Department responded to 1985 Clarke Avenue in East Palo Alto
     regarding a reported multiple gunshot victim.  There were four
11   victims.  Each appeared to have suffered from gunshot wounds.
     John McGeehee appeared to be suffering from a gunshot wound to
12   the right side of his neck and was not breathing.  He subsequently
     expired.  The cause of death was quote, 'transection of the carotid
13   artery with a sanguination perforation gunshot wound to the neck,'
     end quotes.  Darren Trehan appeared to have several gunshot
14   wounds to the abdomen.  He is now a paraplegic and confined to a
     wheelchair.  Jason McGeehee suffered from several gunshot
15   wounds to his torso.  Lisa Page suffered a single gunshot wound to
     her upper right leg.  The area in front of 1985 Clarke Avenue was
16   littered with empty cartridge casings from five different weapons,
     including a 9-millimeter, a 45-caliber, a 38 – 380-caliber, and a 40-
17   caliber parens (a Glock) end parens.  The vehicle parked in front of
     the house was riddled with bullet holes.  Witness Derrick Murphy
18   told police that Darren Trehan, one of the victims, was involved
     with a woman called Kathy Calt who had a child by Travis Outlaw.
19   Travis was extremely jealous of Darren Trehan.  On April 12th,
     1992, Travis Outlaw went to a party at Calt's house, pointed a
20   weapon at Darren Trehan and fired ten to fifteen rounds, not
     striking anyone.  Two days later on April 14th, 1992, Darren
21   Trehan allegedly received a telephone call from Travis Outlaw who
     stated, quote 'you're dead.  I am going to kill you.  If I can't have
22   her, parens (Calt) end parens, no one can have her,' end parens.
     The police made various other contacts with people who knew the
23   situation.  They verified that Outlaw had contacted Trehan and
     supposedly said the next time he saw him he was going to kill him.
24   On April 13th, 1992, while D. Trehan and J. McGeehee were
     driving eastbound over University off ramp, they were confronted
25   by Outlaw and Lamont Scarborough in another car.  Scarborough
     fired an unknown type of weapon at their vehicle.  Trehan and J.
26   McGeehee escaped without injury.  Darren Trehan was interviewed

3

and stated that on April 14th, 1992, he went to the McGeehee residence and was talking to Jason and John McGeehee when Kathryn Calt came by.  He stayed a short time and left.  Two other women came by; Lisa Page and Emica McKnight.  The group was standing in front of the house on Clarke Street.  Shortly thereafter a white vehicle came by without the headlights on.  The vehicle stopped.  Anthony Allen left the vehicle firing a firearm in Jason and John McGeehee's direction.  The vehicle started up then stopped again.  This time Outlaw jumped out of the car firing a handgun.  Trehan stated this incident stemmed from a previous party at Kathryn Calt's house when Outlaw shot off a gun in a fit of jealousy.  Darren Trehan stated that at the party there was an exchange of gunfire and he shot Outlaw in the shoulder.  He also stated that on April 10th, 1992 he and John McGeehee were driving east on Bayshore when they passed a white vehicle containing M. period Griffin, that's G-R-I-F-F-I-N, and A. period Allen.  Allen stopped his car, stood at the head of the vehicle and shot at them.  This, according to Trehan.  Darren Trehan identified the driver as Manny Griffin, the right front passenger as Anthony Allen, the left rear passenger as Eddie Lee Pratt, that's P-R-A-T-T , and the right rear passenger as Travis Outlaw.  Allen was the first out of the vehicle with a firearm in his hand, firing his weapon.  Darren states that he was shot first by Allen, and second by Travis Outlaw.  It was confirmed by two of the defendants that Lamont Scarborough, that's S-C-A-R-B-O-R-O-U-G-H, parens, (not Travis Outlaw) end parens, was present at the 1985 Clarke, that's C-L-A-R-K-E, shooting.  Jason McGeehee was interviewed and confirmed the story, adding that he saw Eddie Lee Pratt leaning out of the right rear passenger window with a handgun in his hand.  Jason believed that Eddie Lee Pratt fired the first shot.  Jason stated he saw Anthony Allen shoot his brother John and proceeded to shoot Darren Trehan.  Jason McGeehee further stated that after Darren was shot, Allen looked in the direct – his direction and shot multiple rounds at him.  Jason stated that all of the perpetrators were associated with the Middletown Gang in East Palo Alto.  Jason McGeehee gave a positive statement to the police that Anthony Allen was in possession of a 40-caliber Glock gun and was the one who killed John McGeehee.

(Answer Ex. 2 at 5-9.)

Petitioner admitted his involvement in the shootings.  He also admitted that he was affiliated or associated with the Midtown Area Gang.  According to petitioner's version of events, he together with Manny Griffin, Eddie Lee Pratt, and Lamont Scarborough were driving to the Light Tree apartment complex to visit friends when unknown people fired multiple shots at their vehicle.  Because of the "ongoing war" between rival factions in East Palo Alto everyone

4

1   involved was armed with weapons.  Petitioner was armed with a 9-millimeter semi-automatic

2   weapon.  Petitioner stated that the vehicle in which he was riding crashed, and the occupants

3   retrieved their weapons and left the car.  Petitioner stated that Jason McGeehee started shooting a

4   gun in their direction, and everyone ran towards Jason firing their weapons.  After the incident,

5   petitioner and the others returned to the vehicle and drove away, dropping people off at various

6   locations.  At the time of his arrest, petitioner was in possession of a Glock 40-caliber weapon.

7   (Answer Ex. 2 at 9-11.)

8                **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

9                A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

10  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

11  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

12  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

13  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

14  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

15  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

16  (1972).

17               This action is governed by the Antiterrorism and Effective Death Penalty Act of

18  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

19  1062, 1067 (9th Cir. 2003).  Title 28 S 2254(d) sets forth the following standards for granting

20  habeas corpus relief:

21               An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
22               not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
23               claim -

24               (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
25               determined by the Supreme Court of the United States; or

26  /////

1          (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
2            State court proceeding.

3    See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

4    (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

5            The court looks to the last reasoned state court decision as the basis for the state

6    court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

7    court reaches a decision on the merits but provides no reasoning to support its conclusion, a

8    federal habeas court independently reviews the record to determine whether habeas corpus relief

9    is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

10   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

11   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

12   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

13   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

14   1167 (9th Cir. 2002).

15           **PETITIONER'S HABEAS CORPUS CLAIMS**

16   I.  Due Process

17           Petitioner claims that the Board's decision finding him unsuitable for parole

18   violated his right to due process.  He argues that, at the time of his hearing, he "had accomplished

19   all of the requirements that the Panel required."  (Pet. Attach. at 3.)  He claims the Board

20   nevertheless denied him parole based solely due to his commitment offense.  Petitioner argues

21   that both the Board and the San Mateo County Superior Court failed to state how his

22   commitment offense demonstrates that his release on parole poses an unreasonable risk to public

23   safety.  (Id. at 13.)  According to petitioner, he has matured, acquired job skills, and gained

24   insight into his commitment offense thereby overcoming any negative factors associated with his

25   commitment offense.  (Id. at 18-19.)

26   /////

II.  No Parole Policy

Petitioner also claims that respondent is failing to adhere to Penal Code § 3041, which states that parole dates "shall normally" be set.  Petitioner argues that the state discriminates against prisoners who are serving indeterminate sentences.  Here, for example, petitioner contends that the Board denied him parole, notwithstanding his efforts at rehabilitation in prison.  Petitioner maintains that he is a member of the class of inmates who are entitled to release but have been denied parole based on this "no parole" policy.  Petitioner summarily argues that this policy violates his rights to due process and equal protection as well as his right to be free from cruel and unusual punishment.  (Pet. Attach. at 23-24.)

**ANALYSIS**

I.  Standards Governing Petitioner's Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies."  Wilkinson v. Austin 545 U.S. 209, 221 (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of

7

1    Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable

2    liberty interest in release on parole, even for prisoners who have not already been granted a

3    parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v.

4    Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re

5    Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly, this court must examine

6    whether the state court's conclusion that California provided the constitutionally required

7    procedural safeguards when it deprived petitioner of a protected liberty interest is contrary to or

8    an unreasonable application of federal law.

9           Because "parole-related decisions are not part of the criminal prosecution, the full

10   panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

11   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

12   citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

13   process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

14   notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

15   reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

16   Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

17   parole issues).  Violation of state mandated procedures will constitute a due process violation

18   only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

19          In California, the setting of a parole date for a state prisoner is conditioned on a

20   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

21   requirements of due process in the parole suitability setting are satisfied "if some evidence

22   supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

23   445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

24   Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

25   standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

26   456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

8

there is any evidence in the record that could support the conclusion reached by the factfinder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some indicia of reliability." Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

When a federal court assesses whether a state parole board's suitability determination was supported by "some evidence" in a habeas case, the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007). This court must therefore:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

Id.

The state regulation that governs parole suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b): "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2281(a). In California, the overriding concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal. 4th at 1086. This "core determination of 'public safety' . . . involves an assessment of an inmates current dangerousness." In re Lawrence, 44 Cal. 4th at 1205 (emphasis in original). Accordingly, /////

9

1
2
3

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

4   Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

5   and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

6            Under California law, prisoners serving indeterminate prison sentences "may

7   serve up to life in prison, but [] become eligible for parole consideration after serving minimum

8   terms of confinement."  In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally sets a parole

9   release date one year prior to the inmate's minimum eligible parole release date, and does so "in

10  a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

11  to their threat to the public."  In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code §

12  3041(a).  A release date must be set "unless [the Board] determines that the gravity of the

13  current convicted offense or offenses, or the timing and gravity of current or past convicted

14  offense or offenses, is such that consideration of the public safety requires a more lengthy period

15  of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code §

16  3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all

17  relevant, reliable information available regarding

18
19
20
21
22

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

23  Cal. Code Regs., tit. 15, § 2281(b).

24           The regulation identifies circumstances that tend to show suitability or

25  unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances are identified as

26  tending to show that a prisoner is suitable for release:  the prisoner has no juvenile record of

1   assaulting others or committing crimes with a potential of personal harm to victims; the prisoner

2   has experienced reasonably stable relationships with others; the prisoner has performed acts that

3   tend to indicate the presence of remorse or has given indications that he understands the nature

4   and magnitude of his offense; the prisoner committed his crime as the result of significant stress

5   in his life; the prisoner's criminal behavior resulted from having been victimized by battered

6   women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present

7   age reduces the probability of recidivism; the prisoner has made realistic plans for release or has

8   developed marketable skills that can be put to use upon release; institutional activities indicate an

9   enhanced ability to function within the law upon release.  Id., § 2281(d).

10          The following circumstances are identified as tending to indicate unsuitability for

11  release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

12  the prisoner had a previous record of violence; the prisoner has an unstable social history; the

13  prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

14  problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

15  2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

16  especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or

17  killed in the same or separate incidents; the offense was carried out in a dispassionate and

18  calculated manner, such as an execution-style murder; the victim was abused, defiled or

19  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

20  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

21  or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

22          In the end, under current California law as recently clarified by the California

23  Supreme Court,

24          the determination whether an inmate poses a current danger is not
           dependent upon whether his or her commitment offense is more or
           less egregious than other, similar crimes.  (Dannenberg, supra, 34
25          Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
           dependent solely upon whether the circumstances of the offense
26

11

exhibit viciousness above the minimum elements required for
conviction of that offense.  Rather, the relevant inquiry is whether
the circumstances of the commitment offense, when considered in
light of other facts in the record, are such that they continue to be
predictive of current dangerousness many years after commission
of the offense.  This inquiry is, by necessity and by statutory
mandate, an individualized one, and cannot be undertaken simply
by examining the circumstances of the crime in isolation, without
consideration of the passage of time or the attendant changes in the
inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th at 1221.

        In addition, in recent years the United States Court of Appeals for the Ninth

Circuit has concluded that, given the liberty interest that California prisoners have in release on

parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for

parole over time may constitute a violation of due process.  The court has addressed this issue in

three significant cases, each of which will be discussed below.

        First, in Biggs, the Ninth Circuit Court recognized that a continued reliance on an

unchanging factor, such as the circumstances of the offense, could at some point result in a due

process violation.[2]  While the court in Biggs rejected several of the reasons given by the Board

for finding the petitioner in that case unsuitable for parole, it upheld three:  (1) petitioner's

commitment offense involved the murder of a witness; (2) the murder was carried out in a

manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner

could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs cautioned that

continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct

prior to committing that offense in denying parole could, at some point, violate due process.  In

this regard, the court observed:

        As in the present instance, the parole board's sole supportable
        reliance on the gravity of the offense and conduct prior to

---

        [2] That holding has been acknowledged as representing the law of the circuit.  Irons v.
Carey, 505 F.3d 846, 853 (9th Cir. 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1129
(9th Cir. 2006).

> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law.  Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of Biggs' offense and prior conduct
> would raise serious questions involving his liberty interest in
> parole.

Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

contrary to the rehabilitative goals espoused by the prison system and could result in a due

process violation."  Id. at 917.

      Next, in Sass, the Board had found the petitioner unsuitable for parole at his third

suitability hearing based on the gravity of his offenses of conviction in combination with his

prior offenses.  461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on

these unchanging factors violated due process.  The court disagreed, concluding that these factors

amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and *could* result
> in a due process violation."  Biggs, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  Cf. id.  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses
> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

      Finally, in Irons the Ninth Circuit sought to harmonize the holdings in Biggs and

Sass, stating as follows:

/////

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[3]

/////

/////

---

[3] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. In re Lawrence, 44 Cal. 4th 1181, 1218-20 & n.20 (2008). Additionally, a recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

14

II.  Petitioner's Due Process Claim

In reaching its decision that petitioner was unsuitable for parole, the Board stated as follows:

PRESIDING COMMISSIONER BRYSON: The time is 1640 in the matter of Anthony Allen.  We have reconvened for the Decision.  Sir, the Panel reviewed all information received from the public and from you, and relied on the following circumstances in concluding that you are not yet suitable for parole, and you would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  The offense was carried out in a callous manner involving multiple victims in the same incident, in the vicinity of 1985 Clarke Avenue in East Palo Alto at about 9:21 p.m.  Four victims suffered gunshot wounds.  John McGeehee, 20-year-old male, was shot in the right side of his neck, quit breathing, and expired.  The cause of death transection of the carotid artery with a sanguination perforation gunshot wound to the neck.  Darren Trehan suffered several gunshot wounds to the abdomen and became a paraplegic confined to a wheelchair.  Jason McGeehee suffered several gunshot wounds to his torso.  Lisa Page suffered a single gunshot wound to her upper right leg.  The offense was carried out in a dispassionate and calculated manner.  As the targeted victims were standing in front of the house on Clarke Street, a white vehicle came by with its headlights off.  The vehicle stopped.  Anthony Allen exited the vehicle firing in Jason and John McGeehee's direction.  After the melee, empty cartridge casings were found from five different weapons deployed at the scene including a 9-millimeter, a 48 – 45-caliber, a 380-caliber, and a 40-caliber Glock.  The offense was carried out in a manner demonstrating exceptionally callous disregard for human suffering and the offenders fled.  Sir, you have a record of violence and extensive prior criminal history including loaded firearm carries (sic), theft, and the sale of narcotics.  Basically it was a criminal gang lifestyle and you failed societies (sic) previous attempts to correct your criminality, including probation.  As to your institutional behavior you obtained your GED in 2005, and you are to be commended for that – that's good.  As to your prison work, you are currently an ESL Clerk, and you are receiving exceptional ratings, and that also – you are to be commended for that.  In fact, you have a history in PIA, Metal Fab, and you have done work – vocation work as a Sandblaster and Grinder, and you have received above average to exceptional work reports.  Also, your work as a Teaching Assistant is very important and you are to be commended for that.  Self-help and therapy, as was covered extensively by Commissioner Weaver includes Anger Management, Stress Management, and other programs in which you have participated.  You also have an excellent discipline record.  You have one 115, which was a non-violent 115.  It was a failure to report, and that was in 2000.  That was your most recent.  Since then you have

15

been disciplinary free for basically six years.  As to your 128 A's, they are minor disciplinaries.  The last also occurred in the year 2000 – failure to appear for the TABE – T-A-B-E Test.  That again, was a minor offense.  Sir, you are displaying positive behaviors in prison.  And this Panel is aware how difficult that is to – to attain in prison.  It is not an easy task, and we understand that you are challenged every day with violence and dope on the inside.  As to the Psychological Report dated July 10, 2006 by Dr. Rouse, R-O-U-S-E, you were given a Global Assessment of Functioning of 90.  That is – is very high.  That is – is a very high assessment.  With a less than – or at least less than average risk of dangerousness should you be paroled and be outside.  As to Parole Plans, you have made – obviously made outreach efforts and – for your readjustment, and you have obtained a position at Free at Last Transitional Housing which was a good choice.  And that's what – it is important that you continue to keep in touch with them and keep that updated.  As to acceptable employment plans, you have not presented the panel with any employment plans or job offers at this time.  However, you clearly have marketable skills in Computer Refurbishing and it – it would be advisable and you are certainly capable of continuing your education.  As to Penal Code 3042 Responses.  Responses indicate opposition to a finding of parole suitability, specifically by the District Attorney of San Mateo County.  In a separate Decision, the Hearing Panel finds that it is not reasonable to expect that parole would be granted at a hearing during the following four years.  Specific reasons for this finding are as follows: The offense was carried out in a callous manner involving multiple victims in the same incident.  The vicinity of 1985 Clarke Avenue, in East Palo Alto, at night, at about 9:21 p.m., four victims suffered gunshot wounds and those victims included John McGeehee, Darren Trehan, Jason McGeehee, and Lisa Page.  The offense was carried out in a dispassionate and calculated manner.  Basically it was a classic drive by gang shooting.  After the melee empty cartridge casings were found from five different weapons deployed at the scene, including a 9-millimeter, 45-caliber, 38-caliber, and a 40-caliber Glock.  The offense was carried out in a manner demonstrating exceptionally callous disregard for human suffering.  The offenders fled and nobody thought about what they had wreaked on that group of people.  Nobody sought any kind of medical aid for those people.  Public safety was at risk from the gunfire.  Sir, you had a clear opportunity to cease, and based on your background, you know that you had that capability of ceasing but you chose to continue.  And you have been very frank today with admitting that, in fact, you did choose that.  Moreover the motive for the crime, based on your relationship with some of the victims was inexplicable.  This was an extremely grave crime.  This Panel believes you need a significant period of time to demonstrate by your actions that you are no longer a risk to public safety.  In denying you parole for four years, we are placing you on the July 2010 calendar for your next Subsequent Hearing.  If this Decision

16

1   is final, you will not get paroled.  The Board will send you a copy
    of the Decision.  It will indicate the reasons you did not get
2   paroled.  If this Decision is not final, the Board will set up another
    hearing.  You can read the laws about your hearing in the
3   California Code of Regulations, Title 15, Section 2041.  The Board
    recommends no more 115's or 128 A's, get self-help, and we do
4   encourage you to participate in self help.  Update your trade.  Keep
    it current because yours are perishable skills.  And earn positive
5   chronos.  And I would add, sir, that I think reaching out to others
    and showing by your actions that you are thinking more of other
6   people than of yourself is very important for the next four years.
    Commissioner Weaver, do you have anything else to add?

7
    DEPUTY COMMISSIONER WEAVER: No, I think you have
8   covered it very well.

9   PRESIDING COMMISSIONER BRYSON: Good luck, sir.  And
    that concludes this hearing.  And the time is now 1646.

10

11  (Answer Ex. 2 at 69-74.)

12          After taking into consideration the Ninth Circuit's decisions in <u>Biggs</u>, <u>Sass</u>, and

13  <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is not entitled to

14  federal habeas relief with respect to his due process challenge to the Board's decision on July 27,

15  2006, to deny him parole.

16          First, and perhaps most importantly, at the time of petitioner's parole suitability

17  hearing, he had not yet served the minimum number of years required by his sentence.  In 1994,

18  petitioner received a sentence of 15 years to life in state prison.  Petitioner's parole suitability

19  hearing took place 12 years later, in 2006.  Pursuant to the Ninth Circuit's holding in <u>Irons</u>, the

20  Board did not violate petitioner's right to due process when it deemed him unsuitable for parole

21  prior to the expiration of his minimum term.  <u>Irons</u>, 505 F.3d at 665.  Moreover, the Board's

22  decision that petitioner was unsuitable for parole and that his release would unreasonably

23  endanger public safety was supported by "some evidence" that bore "indicia of reliability."

24  <u>Jancsek</u>, 833 F.2d at 1390.  The Board relied on the circumstances of petitioner's commitment

25  offense, his prior criminal history, his 115 and 128 A's in prison, and his lack of employment

26  plans or job offers.  According to the cases cited above, these factors constitute "some evidence"

17

1    in support of the Board's decision that petitioner was not yet suitable for parole, especially since

2    he had not served the minimum term required by his sentence.  Sass, 469 F.3d at 1129; Irons, 505

3    F.3d at 665.  This is true even though petitioner may have displayed positive behavior since he

4    was first imprisoned and had obtained a position at Free at Last Transitional Housing.

5            The Board's decision that petitioner was unsuitable for parole and would pose a

6    danger to society if released meets the minimally stringent test set forth in Biggs, Sass, and Irons.

7    Accordingly, petitioner is not entitled to relief on his due process claim.  Sass, 461 F.3d at 1129;

8    Irons, 505 F.3d at 664-65.

9    III.  Petitioner's No Parole Policy Claim

10           The Ninth Circuit has acknowledged that California inmates have a due process

11   right to parole consideration by neutral decision-makers.  See O'Bremski v. Maass, 915 F.2d

12   418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a Board

13   that [is] free from bias or prejudice").  In this regard, parole board officials owe a duty to

14   potential parolees "to render impartial decisions in cases and controversies that excite strong

15   feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v. Procunier, 641 F.2d

16   1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic requirement of due

17   process."  In re Murchison, 349 U.S. 133, 136 (1955).

18           Petitioner has submitted no evidence demonstrating that the Board operated under

19   a no-parole policy or was otherwise biased at his 2006 hearing.  As detailed above, the Board

20   provided petitioner with an individualized assessment of his suitability for parole, and there was

21   "some evidence" in the record to support the Board's decision to deny parole in this case.  See,

22   e.g., In re Rosenkrantz, 29 Cal. 4th 616, 684-86 (2002) (California Supreme Court rejecting

23   petitioner's claim that the former Governor's reversal of the Board's grant of parole resulted

24   from a blanket policy of denying parole in all murder cases because there was "some evidence"

25   to support the Governor's decision).  Accordingly, petitioner is not entitled to relief on this claim.

26   /////

18

1    In sum, for the reasons set forth above the court concludes that petitioner is not

2    entitled to habeas relief his federal petition for writ of habeas corpus should be denied.[4]

3                                    **OTHER MATTERS**

4    Petitioner has filed a request for leave to submit supplemental briefing addressing

5    the California Supreme Court's decision in <u>In re Lawrence</u>.  He also requests a stay of this action

6    until the Ninth Circuit issues its decision in <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008),

7    <u>reh'g en banc granted</u>, 527 F.3d 797 (9th Cir. May 16, 2008).  Respondent has opposed

8    petitioner's request for leave to submit supplemental briefing but agrees that a stay would be

9    proper in this action.

10    As noted above, this court is aware of the California Supreme Court's decision in

11    <u>In re Lawrence</u> and has considered that case in issuing these findings and recommendations.

12    Supplemental briefing from the parties in this regard is unnecessary.  As to petitioner's request

13    for a stay pending the issuance of the en banc decision by the Ninth Circuit in <u>Hayward</u>, the court

14    has reviewed the record and the relevant case law and concludes that a stay in this case is

---

16    [4] Petitioner has presented another, somewhat unclear, argument under the heading
"Disproportionality" at the end of his petition.  (Pet. Attach. at 24-25.)  Insofar as the court has

17    not already addressed this argument in the analysis set forth above, the court will do so here.  To
the extent that petitioner is arguing that the Board is required to compare other crimes of the

18    same type in deciding whether a prisoner is suitable for parole, petitioner is advised that the
California Supreme Court has rejected this argument.  <u>In re Dannenberg</u>, 34 Cal. 4th at 1084,

19    1098 (the Board is not required to refer to its sentencing matrices or to compare other crimes of
the same type in deciding whether a prisoner is suitable for parole).  Nor has petitioner cited any

20    federal authority for the proposition that a state parole board is required to set a parole date where
the Board members believe a prisoner poses an unreasonable risk of danger to society or engage

21    in a comparative analysis before denying parole suitability.  The court also notes that petitioner
argues for the first time in his traverse that the Board's failure to grant him parole violated his

22    plea agreement in the underlying criminal case.  In this regard, petitioner now argues that central
to his plea agreement was his understanding that he would be released on parole if he met the

23    suitability criteria.  Petitioner is advised that he may not raise new claims in his traverse.  <u>See</u>
<u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper

24    pleading to raise additional grounds for relief."); <u>see</u> also <u>Greenwood v. Fed. Aviation Admin.</u>,
28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and

25    distinctly in a party's opening brief").  Moreover, even if petitioner had properly raised this claim
in his petition, his argument is unpersuasive because it is based on the premise that he is suitable

26    for parole.  For the reasons discussed above, the Board's 2006 decision finding him unsuitable
for parole is supported by "some evidence."

1  unwarranted.  See Landis v. North American Co., 299 U.S. 248, 254 (1936) (a district court has

2  broad discretion in deciding whether to stay proceedings in its own court).

3        Finally, petitioner has filed a request that judicial notice be taken of the published

4  decision in In re Rico, 171 Cal. App. 4th 659 (2009).  Petitioner argues that the facts presented in

5  that case in which habeas relief was granted by the California Court of Appeals are similar to his.

6  Petitioner is advised that the court has considered and applied all relevant case law in considering

7  his claims in this habeas action.  Although unnecessary since it involves an officially published

8  decision of the California Court of Appeal, petitioner's request for judicial notice will be granted.

9  See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2000) (Rule 201 of the Federal Rules of

10 Evidence allows a district court to take judicial notice of orders or decisions or proceedings of

11 any federal or state court).

12                              **CONCLUSION**

13        IT IS HEREBY ORDERED that:

14        1.  Petitioner's September 18, 2008 request for leave to submit supplemental

15 briefing (Doc. No. 13) is denied as unnecessary;

16        2.  Petitioner's September 18, 2008 request for a stay of this action (Doc. No. 13)

17 is denied; and

18        3.  Petitioner's March 10, 2009 request for judicial notice (Doc. No. 15) is

19 granted.

20        IT IS HEREBY RECOMMENDED that:

21        1.  Petitioner's December 26, 2007 application for a writ of habeas corpus (Doc.

22 No. 1) be denied; and

23        2.  This action be closed.

24        These findings and recommendations are submitted to the United States District

25 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

26 days after being served with these findings and recommendations, any party may file written

                                      20

1   objections with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3   shall be served and filed within ten days after service of the objections.  The parties are advised

4   that failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: October 6, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
alle2781.hc

21